IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KENNETH PATRICK                                                            PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:14CV102-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                      DEFENDANT

## **REPORT AND RECOMMENDATION**

Kenneth Patrick brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court is the Commissioner's motion to affirm [14]. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the Commissioner's motion be granted and the decision affirmed.

### **I. Procedural History**

Patrick was born on May 15, 1958, and was 55 years of age at the time of the hearing before the ALJ. He has a limited education and past relevant work experience as a poultry catcher. Patrick filed for disability insurance benefits and supplemental security income on August 20, 2012, alleging disability beginning October 1, 2011, due to gout, fluid on the knees, neck problems, arm problems and hypertension. His applications were denied initially and on reconsideration, and he requested and was granted a hearing before an administrative law judge (ALJ). The ALJ issued a decision finding that Patrick is not disabled. The Appeals Council denied review, thereby making the decision of the

ALJ the final decision of the Commissioner. Patrick then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. **Evidence Before the ALJ**

The medical record consists primarily of treatment notes from the Veteran's Administration (VA) Medical Center in Jackson, Mississippi. In March of 2012, Patrick presented at the VA emergency room with pain and swelling in the left knee. R. 453. He was diagnosed with gouty arthritis and treated with therapeutic arthrocentesis. R. 454. In June of 2012, he spent thirty days in the VA's in-patient treatment program for alcohol dependence. R. 299-300. During this time he underwent an x-ray of his cervical spine, which indicated mild degenerative changes. R. 261-61. In September of 2012, the physical therapy department issued Patrick a cane for arthralgia. R. 322. Patrick received a TENS unit in December of 2012 for treatment of chronic pain in the neck and arms. R. 292. At a primary care visit in March of 2013, he received a Toradol injection for pain. R. 315. Patrick's medications include Tramadol for pain, etodolac for arthritis, methocarbamol (a muscle relaxer), and amlodipine and chlorthalidone for hypertension. R. 193, 275.

A consultative physical examination was performed by Dr. Azhar Pasha on October 16, 2012. R. 275-77. Examination revealed mild synovitis in the small joints of the hands and feet and a two-inch laceration repair of the right hand. R. 276. There was no significant synovitis or range of motion limitations in any other joints or extremities. *Id.* Straight leg raises were negative at 65 degrees. *Id.* Strength was slightly decreased in the right hand, being 4/5; strength in the left hand was normal. *Id.* Dr. Pasha observed

2

that there was no evidence of gout at the time of the examination and that Patrick was able to walk without the use of a cane. *Id.* Diagnoses were nearsightedness, farsightedness, poor dentition, previous neck injury with subjective right arm weakness, a history of gout, and a history of right hand laceration repair. *Id.*

Dr. Jan Boggs performed a comprehensive mental status examination on November 27, 2012. R. 279-81. At the examination, Patrick reported that he suffers from pain, which he rated at 8/10 at the time of the exam. R. 280. He also reported that he was intermittently homeless, had no income, and had felt depressed lately, stating that "there is a lot on me." *Id.* Patrick was oriented to time, place, and situation. *Id.* Dr. Boggs opined that he appeared to be of average intelligence, although literacy was not very well developed. *Id.* Patrick was able to repeat five digits forward and three in reverse. *Id.* He remembered two of five recent memory items. *Id.* He was capable of grocery store arithmetic and understood daily problem solving situations and proverbs. *Id.* Dr. Boggs's impression was as follows: Axis I, depressive disorder not otherwise specified; Axis II, no diagnosis and history of alcohol dependence, rule out dependence; and Axis III, gout, history of gunshot wound to the chest, and hypertension. R. 281. In his summary, Dr. Boggs stated that Patrick was "hanging by a thread" financially and was quite needful and was still in pain despite medication. *Id.* According to Dr. Boggs, Patrick is capable of understanding and following directions, although sustaining tasks could be more difficult. *Id.* Dr. Boggs described Patrick as "depressed and hobbled by gout/arthritic type pain." *Id.*

3

At the hearing, Patrick testified that he is homeless and stays at the home of a lady friend.  R. 29-30.  He stated that he has worked on and off for the past 30 years as a poultry catcher but that he can no longer perform this job because of problems with his left hand and knee.  R. 33-34.  Patrick also testified that he suffers from problems with his neck.  R. 41.  He spends most of his day watching television; occasionally he performs light yard work or takes out the garbage.  R. 36.  Plaintiff estimated that he could stand for 30 minutes.  R. 37.

Also testifying at the hearing was a vocational expert (VE).  The VE stated that Plaintiff's past relevant work as a poultry catcher is classified at the medium exertional level.  R. 43.

### III.  **The Decision of the ALJ and Analysis**

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1]  He found that Patrick has the severe impairments of history of

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)   whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)   whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)   whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)   whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)   whether the impairment prevents the claimant from performing any other

right hand laceration and repair and history of previous neck injury with subjective right arm weakness. R. 14. The ALJ found that Patrick's gout, hypertension, depression, and alcohol and drug dependence were nonsevere impairments. R. 14-15. At step three, the ALJ determined that Patrick does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16. The ALJ found that Patrick has the residual functional capacity to perform medium work as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c). *Id.* At step four, the ALJ found that Patrick is capable of performing his past relevant work as a poultry catcher. R. 18. He therefore determined that Patrick is not disabled. *Id.*

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] In his

---

substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

memorandum, Patrick makes two arguments: (1) that the ALJ erred in failing to find that his depression was not a severe impairment; and (2) that the ALJ erred in concluding that Patrick can perform his past relevant work.

*Mental Impairment.* Patrick argues that the ALJ erred in his determination that Patrick's depression was nonsevere.   In making his decision at step two, the ALJ stated that he rejected the opinion of Dr. Boggs, who diagnosed Patrick with depression.  Patrick contends that the rejection of Dr. Boggs's opinion was error.

"[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).  The evidence in this case clearly supports a contrary conclusion.  Indeed, there is simply nothing anywhere in the medical record to indicate that Patrick's depression was severe within the meaning of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), that is, that it would be expected to have an effect on his ability to work.  Patrick has never sought or received treatment for depression.  During his 30-day inpatient treatment for alcohol addiction, his mental status was frequently evaluated, and none of his mental health providers ever noted any signs of depression.  Neither did his Axis I diagnosis include any depressive disorder.  And, as the ALJ observed, Dr. Boggs's opinion as to the existence of depression appears to have been based largely on her assessment of his physical impairments and pain, which are outside his area of expertise.  The undersigned concludes that the ALJ's rejection of Dr. Boggs's opinion did not constitute error.

Patrick's second argument concerning Patrick's mental impairment concerns the opinions of the state agency non-examining consultants who determined that Patrick's

mental impairment was non-severe. The ALJ stated that he gave these opinions "great weight." Patrick argues that the ALJ erred in his reliance on the consultants' opinions.

The focus of Patrick's argument is the Mental Residual Functional Capacity Assessment form completed by one of the consultants on December 7, 2012. R. 47-55. The consultant rated as "moderately limited" Patrick's abilities in one aspect of understanding and memory, in several aspects of sustained concentration and persistence and social interactions, and in all aspects of adaptation. Id at 51-53. She ultimately concluded, however, that his mental impairment was nonsevere. Patrick's position is that the ratings given are inconsistent with a finding that he did not have a severe mental impairment.

One problem with Patrick's argument is that severity and mental residual functional capacity are two separate concepts, and the tests are not the same. The determination of the severity of a mental impairment, made at step two and three of the sequential process, is made by considering the degree of functional limitation in four broad areas (the "B criteria"): activities of daily living; social functioning; maintaining concentration, persistence and pace; and whether the claimant has experienced episodes of decompensation. 20 C.F.R. §§ 404.1520a(c) and (d) and 416.920a(c) and (d). Mental residual functional capacity, on the other hand, comes into play only at step four or five, and requires a detailed consideration of numerous specific abilities that are considered crucial to the ability to work. *See* SSR 96-08p, 1996WL374184, at \*4. The fact that a claimant might have moderate limitations in several of these work-related areas is not the same as concluding that his psychiatric condition is severe within the meaning of *Stone v.*

7

*Heckler*. Patrick has cited no authority to the contrary, and the undersigned is aware of none.

Furthermore, even if the consultant's opinion was internally inconsistent and ALJ erred in the weight given to it, that error was harmless. The ALJ made a detailed analysis of Patrick's limitations in the areas set forth in the B criteria, and he supported his analysis with specific references to record. R. 15. Nowhere in this analysis does he mention or cite to the opinion of the agency consultant. Thus it does not appear that Patrick was prejudiced by the ALJ's reliance on that opinion, as the result would have been the same even in the absence of that reliance.

*Ability to Perform Past Work*. In his remaining argument, Patrick contends that the ALJ erred in finding that Patrick has the physical residual functional capacity to perform his past relevant work as a poultry catcher. Patrick's argument is based on a physical residual functional capacity assessment performed by the state agency consultant. In that assessment, the consultant opined that Patrick was able to stand and/or walk approximately six hours in an eight hour day and could lift 50 pounds occasionally and 25 pounds frequently--in other words, that he was capable of performing the demands of medium work. R. 51.[3] Relying on the testimony of the VE that the job of poultry catcher is

---

[3]The applicable regulations define the ability to do medium work as simply the ability to lift 50 pounds occasionally and 25 pounds frequently. 20 C.F.R. §§ 404.1567(c) and 416.967(c). However, the social security ruling interpreting that regulations states that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8–hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83–10, 1983 WL 31251, at *6.

classified as medium work, the ALJ found that Patrick could perform his past relevant work.

Patrick argues that the consultant's opinion indicates that he found some limitation in Patrick's ability to stand and/or walk and that the limitation to six hours a day is inconsistent with the ability to perform the job of poultry catcher as it was performed by Patrick. He points to Patrick's statement in his application that his job required him to walk or stand seven and half hours a day. R. 146. The undersigned disagrees with Patrick's characterization of the consultant's opinion. The consultant did not place any limitations on Patrick's ability to perform the full range of medium work. Medium work is defined as the ability to lift 25 pounds frequently and 50 pounds occasionally, and to stand and/or walk six hours in an eight-hour day. The consultant's findings match exactly the definition of medium work.

To the extent that Patrick is arguing that the exertional requirements of his past work were greater than those required for medium work, this argument also fails to provide a basis for reversal. Even where a claimant cannot do his past work as he performed it, he is nevertheless not disabled if he can perform the job as it is performed generally in the national economy. 20 C.F.R. § 404.1560(b)(2); *Leggett v. Chater*, 67 F.3d 558, 564-65 (5th Cir. 1995). The VE testified that the job of poultry catcher is classified at the medium exertional level, R. 43, and his testimony was consistent with the DOT section identified by him.[4] The ALJ did not err in his finding at step four.

---

[4]The VE testified that the job of poultry catcher is described at DOT #411.687-018. R. 43.

## IV. **Conclusion**

The undersigned concludes that the Commissioner's decision was based upon substantial evidence and that no reversible errors were made. Accordingly, the undersigned recommends that the Commissioner's motion be granted and the decision affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 2nd day of February, 2015.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE